## Jackson's Administrator v. Semonis.

(Decided March 8, 1927.)

## Appeal from Mercer Circuit Court.

1. Wills—In Daughter's Contest of Father's Will for Alleged Undue Influence of Mother, Erroneous Admission of Testimony that Mother Came to Witness' House and Fired Off Gun Held Not Prejudicial.—In contest by daughter of testator's will which left all property to widow, admitting evidence that while father and mother were separated mother came to witness' house and fired off a gun while either crazed or drunk, though error, held not ground for reversal, as evidence could not have prejudiced jury in decision of whether will was obtained through undue influence.

2. Wills—Error in Admitting Evidence Held Waived, Where, After Exclusion Thereof no Motion was Made to Discharge Jury and Continue Case.—In will contest error in admitting evidence, if any, held waived, where evidence was heard by jury, and later on motion of one of parties excluded from their consideration, no motion being made to discharge jury or continue case.

3. Wills—In Will Contest by Testator's Daughter, Evidence of Undue Influence of Mother Held for Jury.—In daughter's contest of father's will which gave all property to mother, evidence of mother's exercise of undue influence over testator held sufficient to warrant submission of issue of undue influence to jury.

4. Wills—Finding of Jury on Question of Undue Influence Properly Submitted that Instrument in Question was Not Deceased's Will Held Conclusive on Appeal.—Where question of undue influence in will contest was properly submitted to jury, jury's verdict that undue influence was exercised and that instrument was not deceased's will is conclusive on appeal.

E. H. GAITHER and R. L. BLACK for appellant.

C. E. RANKIN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The validity of the last will of the late A. B. Jackson, of Mercer county, is questioned in this litigation. His estate consisted of about $16,000.00 in notes, money and household effects. He left surviving him a widow, appellant Martha E. Jackson, and one daughter, an only living child, Marie Semonis, now appellee. The only part of the short will of Jackson which is pertinent to this investigation reads as follows:

"1. It is my will that immediately upon my death all of my just debts including doctor's bills and funeral expenses be paid in full.

"2. I will, give and bequeath unto my beloved wife, Martha E. Jackson, all my property, real, personal and mixed, absolutely, to do with as she may desire, after the purchase of a joint monument for myself and her of the value of $1,000.00 or thereabouts."

The will is dated October 14, 1920, and Jackson died February, 1926. The daughter successfully attacked the testamentary paper on the sole ground that it was procured by undue influence of the widow, who is the only beneficiary. Appellant now contends that the court ad-

mitted incompetent and irrelevant testimony to her prejudice and that the instructions given by the court to the jury were erroneous and prejudicial to her. The testator and his wife were the parents of four children, three of whom died in infancy, appellee, Marie Semonis, being the only survivor. She grew up in the home and remained there until she was about twenty-five years of age. For some years before she left home in 1920 she was the principal laborer upon the farm as well as the person who looked about everything connected with the place, including the live stock, garden, barn and home. According to her testimony she did all kinds of farm work except plowing, and made it a success. She says she was never permitted by her father and mother to leave home for a day, seldom had a chance to go to church or Sunday school, and was never allowed any liberties; that they objected to her keeping company with young men, and when she went to church one night in company with a young man the parent became enraged and shortly thereafter drove her from home in 1920, and she never returned. The appellee thinks that her mother induced her father to drive her away and blames her mother for all of the trouble. The mother, on the other hand, testified that the daughter was incorrigible, disagreeable and disobedient; that she provoked her father and so conducted herself as to make him dislike her, and that this is the reason why the testator did not mention the daughter's name in the will. The contest is largely based upon the theory that the testamentary paper was the result of the undue influence of the mother over the testator; that the mother prevailed upon the father to give all of his property to the mother; that the mother was an unnatural mother in that she did not have the love and affection which a mother usually bears for her daughter, and, in addition to that, was unjust and unfair to her daughter, it being said in the brief of appellee, "The burden is heavily upon the beneficiary of such an unnatural and unjust will, to show satisfactorily a reason for it." And further, "Where a will is so unnatural and unjust it requires but slight evidence to take it to the jury on the charge of undue influence."

Much of the evidence heard by the jury was introduced for the purpose of proving that the mother of appellee was the controlling spirit in the home, and that she was able to and did influence the father to do things which

he did not otherwise desire to do and which were against his better judgment. Some years before the daughter was driven from the home, as she claims, the father and mother had a disagreement and quarrel and the mother drove the father from the home, following him down the street with a shotgun. They had many other quarrels during their married life. For some years previous to his death the father was an invalid and unable to wait upon himself at times, and was, therefore, under the necessity of having a nurse a large part of the time and was thus at the mercy of the wife and mother. It is under this hypothesis that the daughter undertakes to prove that appellant unduly influenced the testator in the making of the will. There is considerable evidence in the record tending to show that the mother incited the father to drive the daughter from the home and that it was not his inclination or desire to do so, but that he yielded to the persistent machination of the wife, now appellant.

Complaint is made of the introduction of incompetent evidence for appellee. Some of this testimony was introduced to prove that testator and his wife separated a number of years before the making of the will and later became reconciled and lived together, begetting and rearing a family. One witness was permitted to state, in substance, that while the father and mother were separated about 1885 the mother came to the house of the witness and appeared to be crazy or drunk and fired off a gun. This evidence was not relevant and, therefore, not competent and should have been rejected, but we can not see how it could have unduly influenced the jury in the decision of the question of whether the testamentary paper was obtained by the mother through the exercise of undue influence. There was evidence to show the testator had made other wills before the one now in contest was executed and that the former wills gave the property, or some part of it, to appellee. Other evidence tending to show that the mother armed herself and went upon the streets at a time when she was separated from her husband, was allowed to be heard by the jury but was later excluded, and this is complained of as prejudicial; but we will adhere to our established rule that where evidence is heard by a jury and later, on motion of one of the parties, excluded from the consideration of the jury,

and no motion is made to discharge the jury and to continue the case, the error, if any, is waived. Upon the whole we find the trial reasonably free from incompetent evidence, especially free from evidence prejudicial to the substantial rights of appellant.

The court instructed the jury to find the paper offered in evidence to be the will of Jackson unless it believed from the evidence that the execution of the paper was procured by undue influence. The court then defined the term "undue influence" properly. The jury was also instructed that if it believed from the evidence that the execution of the paper was procured by undue influence to find it not to be the last will of Jackson.

It is complained by appellant that the instructions not only submitted the question of undue influence but also of mental incapacity, but we do not so read the instructions. We find nothing in the instructions to warrant the assertion that the question of want of mental capacity to make a will was submitted to the jury by the trial court. The only question submitted was that of undue influence in the procuring of the execution of the paper.

We are of opinion that there was sufficient evidence of the exercise of undue influence by appellant over testator to warrant the submission of the question to the jury, and that question having been properly submitted and the jury having found the existence of undue influence and that the paper was not the last will or testament of Jackson, the case is concluded.

Judgment affirmed.